**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDERICK LAHOVSKI** **and RYAN OLDT,** | : | |
| | : | |
| **Plaintiffs** | | **CIVIL ACTION NO. 3:19-0819** |
| | : | |
| **v.** | | **(JUDGE MANNION)** |
| | : | |
| **RUSH TOWNSHIP,** *et al.*, | : | |
| | : | |
| **Defendants** | | |
| | : | |

## MEMORANDUM

Presently before the court in this civil rights action under 42 U.S.C. §1983 is a motion to dismiss the plaintiffs' amended complaint, (Doc. 15), pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the defendants, Rush Township, Rush Township Police Chief Kenneth Zipovsky, and Rush Township Supervisors Shawn Gilbert and Robert Liebensperger. (Doc. 18). Plaintiffs, Frederick Lahovski and Ryan Oldt, former Rush Township police officers, allege they were terminated as retaliation in violation of the First Amendment for speaking out about improper and unlawful conduct of defendants. Defendants argue that plaintiffs' complaints and reports of wrongdoing were made within the scope of their duties as police officers and

not made as private citizens. For the following reasons, the defendants'
motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the facts set forth in the amended complaint[1], the plaintiffs
were employed with the Rush Township Police Department ("RTPD") as
part-time police officers since 2016. During the times relevant to this action,
defendants Liebensperger and Gilbert were members of the Rush Township
Board of Supervisors. Zipovsky became Chief of RTPD in June 2018. As
police officers, plaintiffs reported directly to the Chief.

During 2017, Oldt alleges that Gilbert called Hope's Towing to tow a
disabled vehicle after Oldt, while on duty as a police officer, called a less
expensive company to tow the vehicle, Zeigler's Towing. Oldt alleges that
Gilbert told him to only use Hope's towing during his duties as a police officer
and that he (Gilbert) was "in charge" and "hires and fires" who he wants.

Also, in 2017, Lahovski alleges, while on duty as a police officer, that
Liebensperger demanded he have a vehicle towed which he (Liebensperger)

---

[1]For the purposes of the instant motion to dismiss, the court must take the
allegations of the plaintiffs' amended complaint as true. Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 547 (2007).

claimed was abandoned and Lahovski refused to do so since it would be in violation of state law regarding the process to remove abandoned vehicles.

In another 2017 incident, Lahovski responded to a vehicle accident and the driver was the son of Tyrone Rarick, a friend of Gilbert. After his investigation, Lahovski advised Rarick and his son that their vehicle would be seized and a search warrant would be obtained to inspect it. Rarick then told Lahovski that Gilbert wanted to speak with him, and Gilbert ordered Lahovski to release the vehicle and leave the accident scene. After initially refusing, Lahovski then left the scene.

In 2018, Lahovski alleges that Gilbert advised him that he called Hope's Towing to tow an abandoned vehicle, and Lahovski told Gilbert he would not take part in the towing since he believed the action was unlawful. Lahovski told Oldt about the incident and asked for Oldt's help in investigating it.

In March 2018, Rush Township posted a notice that the RTPD bargaining unit was being decertified. Former Police Chief Joseph Lipsett told Lahovski that Liebensperger refused to hire any full time police officers unless the union was eliminated. Lahovski complained to Lipsett stating he thought Liebensperger's action regarding the union was illegal.

In May of 2018, Lipsett told Lahovski that Gilbert and Liebensperger wanted to fire him, but Lipsett refused to do it. Later that month, Lipsett died. Zipovsky was then appointed the new Chief.

In June of 2018, Oldt complained to Zipovsky that Gilbert was improperly forcing the Township to use Hope's Towing. In July of 2018, Oldt complained to Rush Township Supervisor Motroni that another part-time police officer with the Township was using his Rush Township taser when he was working as Police Chief with Ryan Township and that this was a misuse of public property and a violation of Rush Township policy. When Zipovsky found out about Oldt's complaint, he told Oldt that he would be terminated if he ever complained "above [his] head" again.

Also, in July of 2018, Lahovski told Zipovsky that Lipsett had kept a file regarding illegal conduct by Gilbert and Liebensperger, but Zipovsky said that the file could not be located.

In August of 2018, Oldt told Zipovsky that Gilbert required RTPD to only use Hope's Towing. Gilbert also told Zipovsky to only use Hope's Towing.

When he was off duty in August 2018, Lahovski told Rush Township Secretary and Treasurer that he believed Gilbert's actions in requiring the

police to use Hope's Towing were unlawful and that he would not get involved with the towing of abandoned vehicles.

Subsequently, Lahovski complained about the alleged improper conduct of Liebensperger and Gilbert to Schuylkill County Assistant District Attorney Jennifer Foose. Foose allegedly said to Lahovski, "you're not surprised are you?". In October of 2018, Lahovski again complained to Foose about the improper conduct of Gilbert. Defendants were later made aware of Lahovski's complaints to Foose through the Rush Township Secretary.

Consequently, on November 15, 2018, Gilbert instructed Zipovsky to not schedule Lahovski and Oldt for any shifts as police officers starting in December 2018. On November 26, 2018, Zipovsky then told Lahovski that he was instructed not to schedule him for any work. Lahovski told Foose that he was removed from the police work schedule. The next day, Zipovsky indicated that Gilbert ordered him to "cease [Lahovski's and Oldt's] hours" and, Liebensperger consented and acquiesced in the directive. Zipovsky followed the order and did not schedule either plaintiff for work with RTPD.

On November 27, 2018, Oldt asked Liebensperger why he was not given any hours to work as a police officer but Liebensperger refused to give him a reason for the decision. Lahovski also questioned Motroni about the

decision not to give he and Oldt any hours and Motroni told him she had no part in the decision.

In January 2019, the Board of Supervisors voted to retain and reappoint Township police officers but plaintiffs were not included on the list of reappointed officers. Thus, plaintiffs allege they were effectively terminated from RTPD.

On July 25, 2019, the plaintiffs filed their amended complaint. (Doc. 15). Their amended complaint contains two counts: (I) a retaliation claim under the First Amendment against the individual defendants, Zipovsky, Liebensperger and Gilbert, alleging that the adverse employment actions taken against them were to retaliate against them for their protected speech and association; and (II) a retaliation claim under the First Amendment against Rush Township alleging that their rights were violated pursuant to the polices, customs and practices of the Township and its police department via its policymakers.

As relief, plaintiffs seek a declaratory judgment that the actions of defendants have violated and continue to violate their constitutional rights, an injunction to enjoin defendants from continuing their alleged retaliatory

practices, and compensatory damages.[2] Plaintiffs also seek punitive damages against the individual defendants.

On August 8, 2019, the defendants filed their instant motion to dismiss for failure to state a claim, (Doc. 18), and filed a brief in support of their motion on August 22, 2019, (Doc. 20). On September 6, 2019, the plaintiffs filed their brief in opposition to the motion. (Doc. 21). The defendants then filed a reply brief on September 20, 2019. (Doc. 22).

On January 24, 2020, the parties filed a stipulation to voluntarily dismiss Chief Kenneth Zipovsky as a defendant in this case with prejudice.

---

[2]Insofar as plaintiffs seek declaratory judgment for alleged past constitutional violations of the defendants, this request for relief will be dismissed. Declaratory judgment is not meant to adjudicate alleged past unlawful activity. There is no question that plaintiffs can request declaratory relief to remedy alleged ongoing violations of their constitutional rights. *See* Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009) (Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future) (citations omitted). However, plaintiffs are not entitled to declaratory relief that defendants violated their rights in the past as they also allege. *Id.* (citing Brown v. Fauver, 819 F.2d 395, 399-400 (3d Cir. 1987) (Third Circuit directed district court to dismiss plaintiff's §1983 claim for prospective relief where he "has done nothing more than allege past exposure to unconstitutional state action"). Thus, plaintiffs' request for declaratory judgment regarding past constitutional violations by defendants fails as a matter of law and will be dismissed with prejudice from their amended complaint.

*(footnote continued on next page)*

(Doc. 25). The court approved of the stipulation and terminated Chief Kenneth Zipovsky as a defendant in this case. (Doc. 26).

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343. Venue is proper in this district pursuant to 28 U.S.C. §1391.[3]

## III. DISCUSSION

The defendants argue that the plaintiffs have failed to plead facts sufficient to sustain claims of retaliation under the First Amendment. The plaintiffs contend that the alleged retaliatory employment actions defendants took against them were due to their complaints about defendants' improper conduct and violated their rights to free speech and freedom of association.

### *Count I, First Amendment Retaliation Claim against Individual Defendants*

In Count I, plaintiffs assert a First Amendment retaliation claim based on free speech under 42 U.S.C. §1983 against Zipovsky, Leibensperger and Gilbert. Plaintiffs sue these defendants in both their individual capacity and their official capacity. As stated, Zipovsky has been dismissed as a defendant in this case.

---

[3]Since the parties state the correct legal standard of review for a Rule 12(b)(6) motion to dismiss in their briefs, the court does not repeat it herein.

To state a claim under §1983, a plaintiff must meet two threshold requirements. He must allege:1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v.Williams,474 U.S. 327, 330-331 (1986). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also* Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207.

Initially, to the extent that plaintiffs have sued Liebensperger and Gilbert both in their individual and official capacities, the court finds that the claims against these two defendants in their official capacity should be dismissed since they are both being sued as officials of Rush Township and the claims against them in their official capacity are redundant of plaintiffs' claims against the Township.[4]

---

[4]The court also notes that plaintiffs cannot seek punitive damages against the individual defendants in their official capacity. *See* Burke v. Twp. of Cheltenham, 742 F.Supp.2d 660, 671 (E.D.Pa. 2010) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)).

Thus, plaintiff's claims against Liebensperger and Gilbert in their official capacity under §1983 cannot proceed "because these claims are viewed as claims against the [Township]." Credico v. West Goshen Police, 2013 WL 6077168, *3 (E.D.Pa. Nov.18,2013) (citing Kentucky v. Graham, 473 U.S. 159, 165-166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity .... It is not a suit against the official personally, for the real party in interest is the entity.").

As such, plaintiffs' First Amendment free speech claim in Count I under §1983 against Liebensperger and Gilbert in their official capacity will be dismissed with prejudice. *See* Credico, 2013 WL 6077168, *5 ("a claim against an official in his official capacity is considered a claim against the entity, i.e., [the Township]."); Dondero v. Lower Milford Township, ---F.Supp.3d ----, 2019 WL 7046915, *3 (E.D.Pa. 2019) (court held that claims under §1983 against the individual Township defendants in their official capacity were redundant of the claims against the Township itself and subject to dismissal).

In Count I against Liebensperger and Gilbert, plaintiffs allege that the adverse actions these defendants took were to retaliate against them for their protected speech and association. They allege violations of both their First Amendment free speech and association rights. Additionally, in Count II of their amended complaint, plaintiffs allege violations of both their First Amendment free speech and association rights. However, they only explicitly plead and state allegations regarding their free speech retaliation claims.

Plaintiffs do not allege any protected activity with respect to any free association claim. No doubt that a First Amendment free speech retaliation claim is separate from a freedom of association retaliation claim. *See* Falco v. Zimmer, 767 Fed.Appx. 288 (3d Cir. 2019).

As such, the court will dismiss without prejudice plaintiffs' First Amendment free association retaliation claims in Counts I and II for failure to state cognizable claims.

The court now considers plaintiffs' First Amendment free speech claim under §1983 against Liebensperger and Gilbert in their individual capacity.

In order to establish a First Amendment retaliation claim, a public employee, such as our plaintiffs, must show: "(1) that his or her [activity] is protected by the First Amendment; and (2) that the [activity] was a substantial or motivating factor of the employer's retaliatory action(s). Flora v. County of Luzerne, 776F.3d 169, 174 (3d Cir. 2015) (citing Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009)). If plaintiffs prove both elements, the burden shifts to the employer to prove that "the same action would have been taken even if the [First Amendment activity, including speech] had not occurred." Falco v. Zimmer, 767 Fed.Appx. 288, 299 (3d Cir. 2019) (citations omitted). *See also* Flora, 776 F.3d at 174.

"The first factor is a question of law; the second factor is a question of fact." Gorum, 561 F.3d at 184 (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006)).

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). If public employees speak in the course of their employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. However, if an employee speaks as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418.

"[T]he question of whether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law." Foraker, 501 F.3d at 240. The majority approach has interpreted this language to mean that "the ultimate question of whether speech is made pursuant to a public employee's official duties is a question for the Court to decide, whereas the question of whether certain factual circumstances exist is a question amenable to resolution by a jury." Baranowski v. Waters, 2008 WL 4000406, at *19 (W.D.Pa. Aug. 25, 2008) (citations omitted).

The inquiry required under Garcetti to determine whether an individual is acting pursuant to his official duties is a "practical one" that does not turn on a given employee's formal job description. Garcetti, 547 U.S. at 424-25. Expression does not have to fall within a public employee's job description or response to an employer's inquiry in order to constitute speech made pursuant to the speaker's official duties. Weintraub v. Board of Education, 593 F.3d 196, 203 (2d Cir. 2010). Factors relevant to the analysis include the employee's duties, the impetus for his or her speech, the setting and subject matter of that speech, and the identities of the individuals to whom that speech is addressed. *See* Brown v. Tucci, 2013 WL 2190145 (W.D. Pa. May 20, 2013) (citing Weisbarth v. Geauga Park District, 499 F.3d 538, 546 (6th Cir. 2007)). Consideration may also be given to "whether the speech was made inside or outside of the work place and whether it concerned the subject matter of the speaker's employment." *Id.* (citing Handy-Clay v. City of Memphis, 695 F.3d 531, 540-41 (6th Cir. 2012)).

Defendants argue that they are entitled to dismissal of plaintiffs' First Amendment retaliation claim in Count I because they did not speak out on any matters of public concern. They state that reports by police officers of suspected unlawful activity is not protected speech since they are acting pursuant to their job duties.

Plaintiffs contend that they exercised their First Amendment rights by complaining of on-going improper and unlawful conduct by the two Township Supervisors and that they engaged in protected speech.

The court will now address the specific requirements to determine whether plaintiffs' speech was a matter of public concern. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S.at 421. A public employee's speech is only protected when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he [or she] made." Flora, 776 F.3d at 175 (quoting Garcetti, 547 U.S. at 418).

The defendants mainly challenge the first two prongs of this three-part inquiry regarding plaintiffs' First Amendment free speech claims against them in Count I.

Whether a public employee is speaking as a citizen turns upon the question of "whether the speech at issue is itself ordinarily within the scope

of an employee's duties." <u>Lane v. Franks</u>, 134 S.Ct. 2369, 2379 (2014). The Supreme Court and the Third Circuit have clarified that the test should not be whether the speech "concerns" or was "related to" those duties. *Id.* at 2379; <u>Flora</u>, 776 F.3d at 178–79. The inquiry is a mixed question of law and fact; "the scope and content of [the public employees] . . . job responsibilities is a question of fact, but the ultimate constitutional significance of those facts is a question of law." <u>Flora</u>, 776 F.3d at 175. There is no "comprehensive framework" for defining the scope of an employee's duties. <u>Garcetti</u>, 547 U.S. at 424.

> The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

*Id.* at 424–25. In <u>Lane v. Franks</u>, 134 S.Ct. at 2380, the Supreme Court found that grand jury testimony given by a supervisor about a subordinate employee who was indicted for mail fraud and theft of receiving federal funds was citizen speech. The employee's testimony included statements that the subordinate employee performed "virtually no services," "generated virtually no work product," and "rarely even appeared for work." *Id.* at 2375. The Supreme Court determined that this testimony was protected even though

the information underlying the testimony was gathered due to the speaker's role as supervisor. *Id.* at 2375, 2380. The Supreme Court focused on the manner of the speech as sworn testimony and found that such testimony fell outside the ordinary responsibilities of the supervisor. *Id.* at 2379. The Supreme Court also "recognized that speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Id.* at 2379.

The fact that plaintiffs became aware of the alleged misconduct issues involving the defendants by virtue of their position as police officers does not automatically mean that their speech is unprotected. *See* <u>Flora</u>, 776 F.3d at 177–78. The <u>Lane</u> case explains that the proper inquiry in distinguishing between unprotected employee speech and protected citizen speech is "whether the speech at issue is itself ordinarily within the scope of [the] employee's duties." 134 S.Ct. at 2379. Thus, it is no longer the appropriate inquiry as to whether the issues raised by plaintiffs relate to or concern their job duties. *Id.* at 2379; <u>Flora</u>, 776 F.3d at 178–79. As such, plaintiffs' speech, particularly their speech about alleged misconduct in the workplace, may have sought "to advance a political or social point of view beyond the employment context", <u>Guarnieri</u>, 131 S.Ct. at 2501, making them matters of

public concern. *See* <u>Snyder v. Phelps</u>, 562 U.S. 443, 453 (2011). Further, plaintiffs have alleged that they made more than one complaint about misconduct in the workplace. Although, "speech that relates solely to mundane employment grievances does not implicate a matter of public concern," <u>Munroe v. Cent. Bucks Sch. Dist</u>., 805 F.3d 454, 467 (3d Cir. 2015), "governmental inefficiency and misconduct is a matter of considerable significance." <u>Garcetti</u>, 547 U.S. at 425.

The court "must conduct 'a particularized examination of each activity for which the protection of the First Amendment is claimed' to determine whether it involves a matter of public concern." <u>Falco</u>, 767 Fed.Appx. at 302 (citation omitted).

At the outset, defendants point out that Rush Township is a Second-Class Township and thus the Board of Supervisors is responsible for the management and supervision of the police department. They cite to 53 P.S. §66902 and <u>Santiago v. Warminster Twp</u>., 629 F.3d 121, 135 n. 11 (3d Cir. 2010). In <u>Santiago</u>, *id.*, the Third Circuit noted that "as a matter of Pennsylvania state law, a township Police Chief is not a final policymaker." (citing 53 Pa. Stat. Ann. §66902 ("vesting authority over the 'organization and supervision' of township police officers with the township board of supervisors")). Thus, under Pennsylvania law, municipal policymaking

authority with respect to RTPD lies with the Rush Township Board of Supervisors. *See id.* Therefore, even though plaintiffs argue that Liebensperger and Gilbert had no power to direct RTPD officers, were not their direct supervisors and that they did not have a duty to report unlawful activity to these defendants, these defendants still had authority over the supervision of police officers. *See id.*

Defendants argue that Lahovski's complaints to Foose, on two occasions as detailed above, regarding their alleged unlawful conduct were not protected speech. Initially, they state that plaintiffs fail to aver that they were aware of Lahovski's complaints to Foose, and allege only that "upon information and belief" they became aware of them. They state that plaintiffs should know whether or not Foose told them about Lahovski's complaints. As such, defendants maintain that Lahovski's complaints to Foose about misconduct in the Township cannot be the basis for a First Amendment claim against them. *See* Ambrose v. Twp. of Robinson, 303 F.3d 488, 494 (3d Cir. 2002) (court held that temporal proximity alone cannot establish causation with respect to a First Amendment retaliation claim without additional evidence of the defendant's knowledge of the protected activity); Cooper v. Menges, 541 Fed. Appx. 228, 232 (3d Cir. 2013) ("The defendant must be aware of the protected conduct in order to establish the requisite causal

connection." (citations omitted). Further, to maintain a constitutional claim against a defendant under §1983, plaintiff must show that each defendant had personal involvement in the alleged violation of plaintiff's rights. *See Rode, supra.*

The court finds that the alleged personal involvement of Liebensperger and Gilbert regarding plaintiffs' retaliation claim based on Lahovski's complaints to Foose is sufficient since plaintiffs clearly allege that defendants became aware of the complaints through the Township Secretary and that they were aware of them when they took their alleged retaliatory actions against them.

However, the courts finds that Lahovski's complaints to Foose are not protected speech under the First Amendment since they were made as part of his official duties as a police officer. Defendants state that "[a]n officer has a duty to report wrongdoing to the chief law enforcement officer of the county." (citing 16 P.S. §4402(a) (duties of district attorney)). Further, as they point out, "Lahovski's complaints concerning allegedly unlawful interference in the Township's towing policy by the Supervisors, the alleged interference of Gilbert in the Rarick incident, and the alleged contents of the missing Lipsett file, are related to, and in furtherance of, Lahovski's duties as a police officer to investigate and report criminal activity." "In order to be

protected by the First Amendment, a plaintiff's activity ordinarily must not have been undertaken pursuant to his job responsibilities as a public employee." <u>Falco</u>, 767 Fed.Appx. at 300-01(citing Garcetti, 547 U.S. at 421–22). It is within the scope of a police officer's duties, i.e., what he "was employed to do", and within the course of his ordinary job responsibilities to report alleged illegal activity to the County prosecutor. *See id.* at 305-06 (Third Circuit found that police chief's reporting against other government officials about their alleged improper interference in the police department to county prosecutor was part of his ordinary job duties as the chief and not done as a private citizen). The court finds that it is of no moment that Lahovski alleges he was "off-duty" when he complained to Foose since it was still within his job duties as a police officer to report improper conduct by Township officials.

Thus, defendants' motion to dismiss will be granted with respect to their First Amendment free speech claim in Count I based on Lahovski's complaints to Foose since they were unprotected under the First Amendment. *See id.* at 306.

Regarding the remaining allegations of plaintiffs with respect to their free speech retaliation claim in Count I against Liebensperger and Gilbert, the court must decide whether plaintiffs have sufficiently pled that they

engaged in First Amendment protected speech. "If, …, the public employee's speech is not part of his ordinary job duties [], then the employee is acting as a private citizen and his speech hence may or may not be protected under the First Amendment, depending on the second step of the analysis [i.e., whether or not the activity involved a matter of public concern or private concern]." *Id.* at 302. Speech involves a matter of public concern when it "involves a matter of political, social, or other concern to the community." *Id.* at 303.

The court now individually addresses the remaining alleged incidents of protected speech raised by plaintiffs.

The first incident involved the alleged interference with the towing of a disabled vehicle in 2017. Oldt alleges that while on duty he ordered Zeigler's Towing company to tow a disabled vehicle and that under RTPD policy it was within his discretion to choose the towing company. However, he states that Hope's Towing also arrived at the scene and towed the vehicle since Gilbert called Hope's Towing due to his personal friendship with its owner even though it cost the Township more money. Gilbert then called Oldt and told him to only use Hope's Towing and stated that he was "in charge" and "hires and fires" who he wants.

Oldt "must first allege that he engaged in the activity as a private citizen, not as a public employee." *Id.* at 305. Responding to a disabled vehicle in the Township is within the ordinary job duties of Oldt's former position as a police officer with RTPD. Thus, Oldt fails to overcome the first step of the analysis, as he engaged in the activity as a public employee as opposed to a private citizen. *See id.*

Second Lahovski alleges that he was approached by Liebensperger and he demanded that Lahovski tow a vehicle. However, Lahovski avers that he refused since the towing at issue would have violated Pennsylvania law regarding the removal of abandoned vehicles. In drawing reasonable inferences in plaintiffs' favor, it is clear that Lahovski did not engage in the alleged activity as a private citizen. Rather, he was acting as a public employee in his capacity as a police officer and within his ordinary job duties regarding how to lawfully handle an abandoned vehicle.

Thus, this second alleged incident fails to qualify as a protected First Amendment activity. *See id.*

Third, Lahovski responded to an accident scene in July 2017 where a vehicle driven by Rarick's son crashed into a telephone pole. Rarick was a friend of Gilbert's. During the investigation, Rarick's son made inconsistent statements to Lahovski which caused him doubt and he decided to seize the

vehicle so that a search warrant could be obtained to inspect it. Gilbert then informed Lahovski that Rarick was his friend and ordered Lahovski to release the vehicle and leave the scene. Lahovski refused stating that it was within his lawful powers as a police officer to seize a vehicle and obtain a search warrant, and Gilbert berated Lahovski and again demanded the release of the vehicle and that Lahovski leave the scene.

Lahovski's conduct in reporting to an accident scene and conducting an investigation was within his ordinary job duties as a police officer. Since Lahovski was acting within his ordinary job duties when he objected to and complained about Gilbert's directives on how to procced with the accident involving his friend's son, this does not constitute protected speech activity. Additionally, if Lahovski had probable cause to believe that Gilbert was obstructing his investigation into the Rarick accident and that a violation of the law had occurred, he could have charged Gilbert with an offense as part of his duties as a police officer.

Thus, the court finds that all of plaintiffs' complaints regarding the towing orders of defendants forcing RTPD police officers to only use Hope's Towing, and regarding how they handle the towing of abandoned vehicles and accident scenes, while unseemly, not to be speech protected under the First Amendment since these incidents were within the ordinary job duties of

their position as police officers with RTPD. *See* Lane, 134S.Ct. at 2379) (Court explained that the proper inquiry in distinguishing between unprotected employee speech and protected citizen speech is "whether the speech at issue is itself ordinarily within the scope of [the] employee's duties.").

The court also finds that the complaint by Oldt about another Township part-time officer using his Township issued taser when he worked as an officer for a different town does not constitute protected speech since he spoke out against using equipment of RTPD when an officer was working for another town and this conduct is within the scope of his ordinary job duties. As a police officer, Oldt had an interest in maintaining and preventing misuse of the equipment of RTPD.

Next, plaintiffs complained about the legality of the Township's attempt to decertify the local Fraternal Order of Police unit and Liebsenberger's intent not to hire any full time police officers unless the RTPD union was eliminated.

"Regarding union related speech, the Third Circuit stated, '[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest...are matters more immediately concerned with the self-interest of the speaker as employee.'" Dondero, 2019 WL 7046915, * 5 (citing Palardy v. Twp. of Millburn, 906 F.3d 76, 83

(3d Cir. 2018)). However, at this stage of the instant case, it is not yet clear if plaintiffs engaged in the speech against decertifying the police union to assist them with their issues with the Township and, whether their speech only amounted to personal grievances and complaints about the conditions of their employment which concerned the self-interests of plaintiffs rather than the RTPD bargaining unit. If so, this did not constitute protected speech, and plaintiffs cannot establish the first element of their First Amendment retaliation claim based on their union speech. Dondero, 2019 WL 7046915, *4 (citing Falco, 767 Fed.Appx. at 306) (stating "the police chief of the City of Hoboken brought a First Amendment retaliation claim based upon, inter alia, his protest of layoffs in the police department. The police chief attempted to assert this conduct was protected speech. The Third Circuit rejected this argument because the police chief 'does not allege that his opposition was outside his ordinary job duties and we cannot reasonably infer that it was.'").

On the other hand, if plaintiffs' union speech was outside of their ordinary job duties and made when acting as citizens, then it may be protected by the First Amendment. See Corcoran v. Cauwels, 2019 WL 3774591, *6 (D.N.J. August 9, 2019) ("Although the Third Circuit has not explicitly determined whether union activities are categorically protected or unprotected, other Courts of Appeals have used similar reasoning to

establish a bright-line rule that union activities are protected from retaliation under the First Amendment.") (citations omitted). In Corcoran, *id.* at *7, the court denied a motion to dismiss a police officer's speech as a member and leader of the union finding that the alleged facts created a reasonable inference that he acted as a private citizen "not solely as a union member reporting something up the chain of command", and found that "[b]ecause this union activity does not fall within the scope of his 'ordinary job responsibilities,' Flora, 776 F.3d at 178, and since a citizen could also have filed a similar [] request [regarding an accounting of funds in connection with alleged wrongdoing], Plaintiff has sufficiently pled a protected activity."

The Dondero case and its finding regarding union speech was decided on a summary judgment motion. Here, defendants filed a motion to dismiss. Discovery is not yet completed. As in the Corcoran case, *id.* at *8, the court finds that at the pleading stage, "Plaintiff[s] ha[ve] plausibly pled that the[] [union speech] addressed a matter of public concern, [and that] Plaintiff[s] ha[ve] plausibly pled a violation of [their] First Amendment rights."

Thus, the court finds that plaintiffs have sufficiently alleged that their stated speech about decertifying the police union constituted activity plaintiffs engaged in as private citizens instead of as a public employees since supporting unions can be outside of the ordinary job duties of police

officers. *See* Corcoran, *supra*. The court also finds that plaintiffs have alleged that this activity involved a matter of political, social, or other concern to the community since supporting Township unions falls within these parameters. *See* Falco, 767 Fed.Appx. at 305 (Third Circuit found that police chief's supporting of political candidates in municipal elections was outside of ordinary duties of police officers and was an activity of public, not private, concern.). As such, plaintiffs' speech about decertifying the police union can be said, at this point of the case, to have sought "to advance a political or social point of view beyond the employment context", Guarnieri, 131 S.Ct. at 2501, making it a matter of public concern. *See* Snyder v. Phelps, 562 U.S. 443, 453 (2011).

Since the court has found that plaintiffs have plausibly alleged that they spoke as private citizens regarding the police union and their activity addressed a matter of public concern, the court "must determine whether or not [defendants] had an adequate justification for treating [plaintiffs] differently from any other member of the general public." Falco, 767 Fed.Appx. at 304 (citations omitted). In conducting this step of the analysis, the court will utilize the balance test of Pickering v. Bd. of Educ., 391 U.S. 563, 566, 88 S.Ct. 1731 (1968), which requires that the court "balance . . . the interests of the [employee], as a citizen, in commenting upon matters of

public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568; Falco, 767 Fed.Appx. at 303-04. "In performing this balancing, the manner, time, place, and entire expression of the context of the expression are relevant." Swartwelder v. McNeilly, 297 F.3d 228, 235 (3d Cir. 2002). Specifically, a plaintiff's interest as a citizen as well as the public's interest in the speech must be balanced against the government's interest "as an employer, in promoting workplace efficiency and avoiding work place disruption." Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 991 (3d Cir. 2014). "If the public employer's interest is 'significantly greater' than the public employee's interest in contributing to public debate, then the public employee's speech is not protected." Falco, 767 Fed.Appx. at 304 (citations omitted). However, if "the government's interest in promoting the efficiency of its services is not significantly greater than the employee's interest in speaking about the matter and the value to the community of his being able to do so, then the speech is protected under the First Amendment." *Id.*

Plaintiffs contend that defendants did not have an adequate justification to treat them differently than any other member of the general public regarding their complaints about the decertification of the police union. Participation in a union is a right of any citizen and restricting public

employees from joining in a union is in contravention of this right. *See* Dondero, 2019 WL 7046915, *5 (stating "union association is protected constitutional speech") (citing Palardy, 906 F.3d at 84).

At this stage of the case, the court cannot determine whether defendants' interest in promoting the Township's services efficiently significantly outweighs plaintiffs' interest in speaking out about the police union and the community's interest in having citizens join unions. Plaintiffs will be permitted discovery on the issue of whether their interest and the community's interest in having citizens join unions and engage in union activities outweighs the Township's and defendants' interest in promoting their services' efficiency. *See* Falco, *supra*. Further, discovery will be permitted to determine whether plaintiffs' speech about the police union interfered with the daily duties of police officers or interfered with the operation of RTPD.

Thus, the court finds that plaintiffs have sufficiently alleged that the defendants did not have "'an adequate justification for treating [them] differently from any other member of the general public' as a result of the statement[s] [about the union decertification they] made.'" Flora, 776 F.3d at 175 (quoting Garcetti, 547 U.S. at 418).

Further, plaintiffs sufficiently allege that defendants' retaliatory acts taken against them by not giving them any shifts and not including them on the work schedule, i.e., essentially terminating them, were motivated by their stated complaints about the police union. They also allege that the defendants' retaliation occurred in sufficient temporal proximity to their complaints.

As such, plaintiffs' complaints about the decertification of the police union may constitute protected First Amendment activity.

Therefore, defendants' motion to dismiss will be denied with respect to plaintiffs' First Amendment free speech claim against Gilbert and Liebensperger in Count I regarding their complaints about the decertification of the police union. Also, as detailed above, plaintiffs' allegations sufficiently show the personal involvement of Gilbert and Liebensperger with the stated claim so that it will proceed against these two defendants in their individual capacity.

The next alleged incident occurred when Lahovski was off-duty and he told Zipovsky that Lipsett had a file of illegal conduct involving Gilbert and Liebensperger, and Zipovsky then informed Lahovski that the file was missing. Lahovski later complained to Foose about the missing file and about the subsequent alleged retaliation by defendants due to his complaints.

As discussed above, the court has found all of plaintiffs' complaints to Foose about alleged unlawful conduct and inappropriate behavior by defendants to have been made within the scope of their ordinary job duties and not to constitute protected speech under the First Amendment. *See* Falco, 767 Fed.Appx. at 305-06 (Third Circuit affirmed district court's granting of motion to dismiss for failure to state a First Amendment free speech claim regarding city police chief's complaints to county prosecutor about the improper interference with the operations of the police department and its investigations by city officials.).

Since plaintiffs have already filed an amended complaint and since the court finds futility based on the above discussion, it will dismiss all of plaintiffs' First Amendment free speech retaliation claims against Gilbert and Liebensperger in Count I, except for their speech regarding the decertification of the police union, with prejudice.

### Count II, First Amendment Retaliation Claim against Rush Township

Since plaintiffs name Rush Township as a defendant and allege that it violated their constitutional rights, the standards annunciated in Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018 (1978), apply to their claim against it. *See* Moeck v. Pleasant Valley School Dist., 983 F.Supp.2d 516, 524 (M.D.Pa. 2013). A municipality is a "person" for

purposes of §1983. *See* <u>Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997)</u>. But §1983 does not allow municipal liability under a theory of *respondeat superior. Id.* A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *Id.* "Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." <u>Moeck v. Pleasant Valley School Dist., 983 F.Supp.2d at 524</u>; <u>Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014)</u> ("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation.") (citation omitted). The plaintiff bears the burden of identifying the policy or custom. *Id.* This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. *Id.*

A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." <u>Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)</u> (quoting <u>Pembaur v. City</u>

of Cincinnati, 475 U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." City of St. Louis v. Praprotnik, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. City of Canton, Ohio v. Harris,489 U.S. 378, 385 (1989); Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 249–50 (3d Cir. 2007) (citation omitted).

Additionally, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 405, 117 S.Ct. 1382 (1997).

"[F]or protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." Dondero, 2019 WL 7046915, *3 (citing Ambrose, 303 F.3d at 493). "If [plaintiffs] show[] that the Township was aware of the protected conduct, then

[they] may use the temporal proximity between that knowledge and the adverse employment action to argue causation." *Id.*

Under <u>Monell</u>, plaintiffs have sufficiently alleged that Gilbert and Liebensperger had policymaking authority and were final policy makers, and they have alleged what actions these defendants took that can be said to be official policy. Plaintiffs have alleged that Rush Township had a policy or custom which enabled the misconduct and unconstitutional behavior of the two individual defendants to retaliate against them for exercising their First Amendment free speech right regarding the decertification of the police union. As such, plaintiffs have also alleged that Rush Township had an official policy in violation of their First Amendment rights and that the policy was the cause of their injuries.

However, since the court has found that plaintiffs' remaining allegations regarding their First Amendment retaliation claim against Gilbert and Liebensperger were not protected speech, these other allegations cannot be the basis of plaintiffs' claim under <u>Monell</u> against Rush Township in Count II. *See* <u>Dondero</u>, 2019 WL 7046915, *10 ("Absent an underlying constitutional violation by an agent of the municipality, however, the municipality itself may not be held liable under §1983." (citation omitted). As such, all of plaintiffs' First Amendment free speech retaliation claims against

Rush Township in Count II, except for their speech regarding the decertification of the police union, will be dismissed with prejudice.

## IV. CONCLUSION

For the reasons discussed herein, the defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims against Gilbert and Liebensperger in their official capacity in Count I are dismissed with prejudice. Plaintiffs' claim for declaratory judgment against defendants for alleged past violations of their constitutional rights are dismissed with prejudice. Plaintiffs' First Amendment free association retaliation claims against Gilbert and Liebensperger in Count I are dismissed without prejudice. Defendants' motion is granted with respect to all of plaintiffs' First Amendment free speech retaliation claims against Gilbert and Liebensperger in Count I, except for their speech regarding the decertification of the police union. Plaintiffs' First Amendment claim regarding their speech about the decertification of the police union against Gilbert and Liebensperger in Count I in their individual capacity shall proceed.

Plaintiffs' First Amendment free association retaliation claims against Rush Township in Count II are dismissed without prejudice. Defendants' motion is granted with respect to all of plaintiffs' First Amendment free

speech retaliation claims against Rush Township in Count II, except for their speech regarding the decertification of the police union, which claim shall proceed. An appropriate order shall follow.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 18, 2020**
18-2201-01